**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

CLIFFORD P. BEEDE, SHERRY E. HALLIGAN,
EILEEN MOTTL, and CATHERINE G. WEEKS,

                        **Plaintiffs,**

    vs.                                                  1:13-cv-120
                                                            (MAD/RFT)

STIEFEL LABORATORIES, INC., CHARLES W.
STIEFEL, BRENT D. STIEFEL, TODD STIEFEL,
STEPHEN KARASICK, MICHAEL CORNELIUS
and MATT S. PATTULLO,

                        **Defendants.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**FREEMAN, HOWARD LAW FIRM**         **MATTHEW J. GRIESEMER, ESQ.**
441 East Allen Street                            **PAUL M. FREEMAN, ESQ.**
Hudson, New York 12534                    **LELA M. GRAY, ESQ.**
Attorneys for Plaintiffs

**GREENBERG, TRAURIG LAW FIRM**      **DAVID A. COULSON, ESQ.**
333 SE 2nd Avenue                               **HILARIE BASS, ESQ.**
Miami, Florida 33131
Attorneys for Defendants

**GREENBERG, TRAURIG LAW FIRM**      **TODD D. WOZNIAK, ESQ.**
3333 Piedmont Road
Suite 2500
Atlanta, Georgia 30305
Attorneys for Defendants

**SCHOEMAN, UPDIKE LAW FIRM**        **BETH L. KAUFMAN, ESQ.**
551 Fifth Avenue                                 **PAULETTE J. MORGAN, ESQ.**
New York, New York 10176
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On January 13, 2013, Plaintiffs commenced this federal question action alleging securities fraud, breach of fiduciary duty and violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Currently before the Court is Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim, brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

### A. Parties

Plaintiffs Clifford P. Beede, Sherry E. Halligan, Eileen Mottl and Catherine G. Weeks (collectively "Plaintiffs") are each individuals residing within the State of New York. *See* Dkt. No. 1 at ¶¶ 7-10. Defendant Stiefel Laboratories, Inc. ("Steifel Labs") is a Delaware corporation with its principal place of business in the State of North Carolina. *See id.* at ¶ 11. In 2009, Stiefel Labs was purchased by GlaxoSmithKline, PLC ("GSK") and is now a wholly-owned subsidiary of GSK. *See id.* at ¶ 13. Defendants Charles W. Stiefel ("Charles Stiefel"), Brent D. Stiefel ("Brent Stiefel") and Todd Stiefel were shareholders of Stiefel Labs and members of its Board of Directors, and reside in the States of North Carolina, Washington and North Carolina, respectively. *See id.* at ¶¶ 14-17. Defendant Stephen Karasick was Senior Vice President of People & Technology at Stiefel Labs and resides in the State of Georgia. *See id.* at ¶ 18. Defendants Michael Cornelius ("Cornelius") and Matt S. Pattullo ("Pattullo") were Vice President/Chief Financial Officer and Vice President of Human Resources, respectively, and reside in the State of Florida. *See id.* at ¶¶ 19, 20.

### B. The ESOP

Plaintiffs were all employed by Stiefel Labs and worked at its facility in Oakhill, New York. *See id.* at ¶¶ 7-10, 12. During Plaintiffs' employment, Stiefel Labs maintained the Stiefel

2

Laboratories, Inc. Employees' Stock Bonus Plan-Trust (the "ESOP"), a defined benefit contribution plan under ERISA. *See id.* at ¶ 24. The ESOP was controlled and managed by a Committee, a Trustee and a Plan Administrator, each of which was appointed by Stiefel Labs' Board of Directors. *See id.* at ¶ 25. Defendants Charles Stiefel, Pattullo, Karasick and Cornelius acted as members of the Committee, and Defendants Charles Stiefel and Karasick acted as Trustee. *See id.* at ¶¶ 28-30.

Qualifying Stiefel Labs' employees, including Plaintiffs, were allocated shares of Stiefel Labs' stock on an annual basis. *See id.* at ¶¶ 31, 32. Prior to November 2008, employees were not able to freely sell their stock in Stiefel Labs, except in the case of retirement, death or termination. In such cases, Stiefel Labs had the option of buying back the employee's stock at the shares' current fair market value. *See id.* at ¶¶ 33-34.

Stiefel Labs engaged the firm of Bogush & Grady to perform annual valuations of Stiefel Labs for the purpose of determining the current fair market value of its stock (the "Bogush Valuations"). *See id.* at ¶ 38. Plaintiffs allege that the Bogush Valuations were improper in several respects and routinely undervalued Stiefel Labs, and that Defendants knew or should have known that the stock was being undervalued. *See id.* at ¶¶ 39-49. The Bogush Valuation for March 31, 2008 valued Stiefel Labs at approximately $876 million, resulting in a $16,469 per share value for Stiefel Labs' stock. *See id.* at ¶ 45.

Plaintiffs allege that between 2006 and 2008 Stiefel Labs received offers from private equity firms to buy stock in the company that valued Stiefel Labs in the range of $1.9 to $2.79 billion. *See id.* at ¶¶ 55-59. In August 2007, Stiefel Labs sold a 19% interest to The Blackstone Group, LP ("Blackstone") for $500 million, implying a value for Stiefel Labs in excess of $3 billion. *See id.* at ¶¶ 60, 61. Plaintiffs allege that Defendants continued to rely on and use the

3

Bogush Valuations to set the current fair market value of Stiefel Labs' stock despite knowing the higher value implied by the Blackstone purchase and other offers. *See id.* at ¶¶ 63-66.

**C.      Stiefel Labs Purchases Plaintiffs' Shares**

In November 2008, Stiefel Labs notified its employees that the ESOP would be merged into its 401k plan and that employees were being afforded a one-time opportunity to sell or "put" their stock to the company between February 1, 2009 and March 1, 2009. *See id.* at ¶¶ 69-71. At the time of the announcement, Plaintiffs allege that Stiefel Labs was actively seeking buyers, a fact Defendants did not disclose to Stiefel Labs' employees. *See id.* at ¶¶ 73-92. In January 2009, Plaintiffs, "based upon the misrepresentations and omissions of the Defendants," and unaware that Stiefel Labs was in the process of negotiating a sale of the company, elected to put their shares to the company at the 2008 Bogush Valuation of $16,469 per share. *See id.* at ¶¶ 101, 105, 109, 113. In February 2009, Stiefel Labs repurchased Plaintiffs' shares, at that price, as follows: 19 shares from Plaintiff Beede, 3 shares from Plaintiff Halligan, 1.7656 shares from Plaintiff Mottl and 7 shares from Plaintiff Weeks. *See id.* at ¶¶ 99-117.

On April 20, 2009, Stiefel Labs announced that GSK had agreed to pay $2.9 billion to acquire all outstanding shares in Stiefel Labs, at a price of $68,515.29 per share of common stock. *See id.* at ¶¶ 93-95. GSK also agreed to assume Stiefel Labs' debt in the amount of $400 million and to pay up to an additional $300 million provided certain future benchmarks were met. *See id.* at ¶ 93. Thus, the total potential value of the deal was $3.6 billion, some $2.7 billion in excess of the 2008 Bogush Valuation. *See id.*

**D.      Plaintiffs' Termination and the Releases**

Each Plaintiff was terminated by GSK, with the dates of termination ranging from June 2008 to July 2012. *See id.* at ¶¶ 7-10. Defendants allege in their moving papers that Plaintiffs

4

Beede, Halligan and Weeks each signed releases when they elected to receive severance pay and/or extended benefits at the time of their terminations. *See* Dkt. No. 30-1 at 4-10.[1] Each of these Plaintiffs altered the releases to except claims against Stiefel Labs relating to its repurchase of ESOP shares prior to its acquisition by GSK. *See id.*

**E.     Plaintiffs' Complaint**

Plaintiffs' complaint alleges four causes of action, all stemming from Stiefel Labs' repurchase of Plaintiffs' shares. Plaintiffs' first cause of action is brought only against Defendants Charles Stiefel and Stiefel Labs and alleges breaches of Sections 19(b) and 29(a) of the Securities Exchange Act as well as SEC Rule 10b-5. *See* Dkt. No. 1 at ¶¶ 125-44. Plaintiffs second cause of action is against all Defendants for violations of ERISA § 404. *See id.* at ¶¶ 145-66. Plaintiffs' third cause of action is brought against all Defendants for breach of co-fiduciary duty under ERISA § 405(a). *See id.* at ¶¶ 167-78. Plaintiffs' fourth cause of action is brought against all Defendants for violations of ERISA §§ 406 and 408. *See id.* at ¶¶ 179-91.

**F.     Defendants' Motion**

Currently before the Court is Defendants' motion to dismiss the complaint as against Plaintiffs Beede, Halligan and Weeks, brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2] Defendants argue that Plaintiffs are all bound by releases that prevent them from bringing the instant claims. Defendants move in the alternative for partial dismissal of Plaintiffs' claims against Defendants Karasick, Cornelius and Patullo, and Plaintff

---

[1] This allegation is referenced solely for context, and is not presumed true for the purposes of the present motion.

[2] As Defendants do not move against Plaintiff Mottl, all subsequent references to "Plaintiffs" refer only to Plaintiffs Beede, Halligan and Weeks.

5

Beede's claims against Defendants Charles Stiefel, Todd Stiefel and Brent Stiefel, on the grounds that such claims are barred even by the altered releases. *See* Dkt. No. 30-1 at 25-6.

### III. DISCUSSION

A.  **Subject Matter Jurisdiction**

Where, as here, a defendant moves for dismissal under both Rule 12(b)(1) and 12(b)(6), courts should consider the jurisdictional challenge first as a lack of jurisdiction renders the remaining arguments moot. *United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir. 1993). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "To survive a defendant's Rule 12(b)(1) motion to dismiss for lack of standing, plaintiffs must allege facts that affirmatively and plausibly suggest that [they have] standing to sue." *Kiryas Joel Alliance v. Village of Kiryas Joel*, 495 F. Appx. 183, 188 (2d Cir. 2012) (alteration in original) (internal quotation omitted). The court must accept all undisputed factual allegations as true and draw all reasonable inferences in the light most favorable to the non-moving party. *See United States v. All Funds on Deposit at Citigroup Smtih Barney Acct. No. 600-00338*, 617 F. Supp. 2d 103, 109 (E.D.N.Y. 2007) (citing *Robinson v. Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001)). To the extent that the allegations in the complaint are disputed with evidentiary submissions, however, the court may refer to that evidence. *See Robinson v. Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (citation omitted).

Article III standing is a prerequisite to a finding of subject matter jurisdiction. *Hollingsworth v. Perry*, ---- U.S. ----, ----, 133 S. Ct. 2652, 2661 (2013). To show Article III standing, a plaintiff must show "that he [or she] has suffered a concrete and particularized injury

that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

In this case, Defendants do not appear to make a factual challenge to the Court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337. Instead, Defendants argue that the releases deprive Plaintiffs of standing to pursue their claims. *See* Dkt. No. 30-1 at 15-17. The Court, however, finds that the existence of a valid and applicable release, assuming one exists, is an affirmative defense that goes to the merits of a litigant's claim, and not an issue that concerns standing. *See Burke v. Lash Work Environments, Inc.*, 408 Fed. Appx. 438, 441 (2d Cir. 2011) (citing *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010)) (reversing the district court's grant of a Rule 12(b)(1) motion, finding that, "[n]otwithstanding the complaint's reference to the Settlement Agreement, the complaint 'was drawn so as to seek recovery under ERISA, vesting the District Court with subject matter jurisdiction.' . . . [W]hether the defendants' withdrawal liability obligations and the other ERISA claims are extinguished by the Settlement Agreement and Release are questions whose resolution is properly addressed by the District Court on a Rule 12(b)(6) motion").

Based on the foregoing, the Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

**B.    Failure to State a Claim**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

7

F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

Defendants' argue that Plaintiffs' claims are subject to dismissal because they each executed releases waiving, among other things, their rights to bring these claims.  Defendants do not argue that the complaint is otherwise deficient under Rule 12(b)(6), *i.e.*, Defendants do not

8

contest the sufficiency of the allegations to state claims under the Securities Exchange Act or ERISA. As such, resolution of Defendants' motion turns on whether the Court can consider the releases and whether the releases unambiguously bar Plaintiffs from proceeding. *See Mangiafico*, 471 F.3d at 398.

Defendants invite the Court to take judicial notice of and rely on a plethora of documents filed in connection with the three lawsuits brought by GSK against Plaintiffs, including affidavits of representatives of GSK, affidavits submitted by Plaintiffs, and the unaltered and altered releases for each of Plaintiff. *See* Dkt No. 30-1 at 15-16. After careful consideration of the authority cited by Defendants and the purpose of a 12(b)(6) motion, the Court finds that there is no basis for the Court to consider the factual affidavits for the truth of the allegations contained therein. All of the cases cited by Defendants, and the authority on which those cases rested, concerned judicial notice of original documents, not affidavits prepared for the purpose of litigation. *See, e.g.*, *33 Seminary LLC v. City of Binghamton*, 869 F. Supp. 2d 282 (N.D.N.Y. 2012) (finding that a court can take judicial notice of petitions and decisions); *Holmes v. Air Line Pilots Assoc.*, 745 F. Supp. 2d 176 (E.D.N.Y. 2010) (taking notice of various documents filed in prior litigation); *Byrd v. City of New York*, No. 04-1396-CV, 2005 WL 1349876 (2d Cir. June 8, 2005) (finding that a court can take notice of "So Ordered" stipulation of settlement). More to the point, consideration of the affidavits would necessarily be for the truth of the allegations contained therein, which is not a permissible use of judicial notice. *See* Fed. R. Evid. 201; *Global Network Communications, Inc. v. City of New York*, 458 F. 3d 150, 157 (2d Cir. 2006) (holding that, on motion to dismiss, court may take notice of public record to establish the fact of its existence, not the truth of the matters contained therein).

9

Whether the Court can take judicial notice of the releases is a closer matter. On the one hand, the releases are operative documents, similar to stipulations of settlement, that are relevant for the fact that they exist. *See, e.g.*, *Byrd*, 2005 WL 1349876. On the other, the validity and scope of the release is not necessarily apparent from the face of the document, particularly when dealing with an altered release as in this case. The Court finds the latter consideration determinative.

The Court finds that it is not capable of determining the validity and effect of the releases solely by reference to the documents themselves, and thus the releases are not subject to judicial notice. *See* Fed. R. Evid. 201(b) (judicial notice only appropriate for facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). While the Court declines to rely on the affidavits previously discussed, it does note that those affidavits reveal that the parties have sharply contradicting views on the effect of the releases.[3] The parties will have the opportunity to press their theories in due course. A motion to dismiss is not the appropriate time.

For the foregoing reasons, Defendants motion to dismiss is denied. Defendants' motion in the alternative for partial dismissal of Plaintiffs' claims against Defendants Karasick, Cornelius and Patullo, and Plaintiff Beede's claims against Defendants Charles Stiefel, Todd Stiefel and Brent Stiefel is denied for the same reasons.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

---

[3] It is for this reason that the Court would still decline to dismiss Plaintiffs' claims, even if consideration of the releases was permissible.

10

**ORDERS** that Defendants' motion to dismiss for lack of subject matter jurisdiction is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss for failure to state a claim is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 6, 2014
       Albany, New York

Mae A. D'Agostino
U.S. District Judge